NATIONAL BANK OF THE REPUBLIC *vs.* GEORGE S. DELANO
& another.

Middlesex.    December 5, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

A communication made by a client to his attorney, in the course of the attorney's employment and for a purpose material to the proceedings for which he was employed, is not admissible in evidence, although the communication was not made for the purpose of obtaining advice.

A firm consisting of A. and B., going into voluntary insolvency, employed an attorney at law to act for them in the insolvency proceedings.    B. went to the office of the attorney and there signed and swore to schedules of liabilities.  The Court of Insolvency ordered a claim on certain notes to be expunged, on the ground that the notes were renewals of prior individual notes of A. made in the firm name by A. without the knowledge of B.    Upon a petition to revise this order and establish the claim, the petitioner offered to show by the testimony of the attorney, that B. said to the attorney, at the time of signing and swearing to the schedules, that the firm had assumed with other liabilities the notes in question, and that this communication was not made for the purpose of obtaining advice.  The evidence was excluded.    *Held,* that the evidence was properly excluded as a confidential communication between attorney and client.

PETITION to the Supreme Judicial Court for the county of Middlesex to revise an order of the Court of Insolvency for that county, expunging a claim of the National Bank of the Republic against the insolvent estate of the firm of George S. Delano and Cadmus R. Delano, copartners, filed September 18, 1899. The case was heard by *Holmes*, C. J.

It appeared that, before November 12, 1897, George S. Delano had been engaged in a manufacturing business in Medford, and was indebted to the National Bank of the Republic on certain promissory notes, aggregating about $6,000.

On November 13, 1897, George S. Delano took into partnership with him his son Cadmus R. Delano.  Subsequently, as the notes held by the National Bank of the Republic matured, George S. Delano paid them with the checks of the firm on the same bank, and immediately after the payment of each note the bank discounted a note of the firm for a like amount.  The court found that in substance these transactions were renewals, and that they were carried through by George S. Delano without the knowledge of his son.

The firm of George S. Delano and Son went into voluntary insolvency in March, 1898, and the above mentioned notes, signed with the name George S. Delano and Son, were included in the schedules signed and sworn to by both partners as debts of the firm. The National Bank of the Republic proved its claim on these notes against the firm of George S. Delano and Son, and a petition was brought in the Court of Insolvency by Cadmus R. Delano to expunge the claim. After hearing, the Court of Insolvency made an order expunging the claim, and this petition was brought under Pub. Sts. c. 157, § 15, to revise that order.

At the hearing before the Chief Justice, it was shown that George S. Delano employed one Mr. Emmons as attorney to put the firm through insolvency, and gave him a list of the creditors. Emmons made out a schedule of the creditors in proper form, including the notes above mentioned. At the request of George S. Delano, Cadmus R. Delano went to the office of Emmons, where the contents of the schedule of creditors and the fact that these notes were included therein was made known to him, and he then signed the schedules and swore to their accuracy before Emmons as justice of the peace.

The petitioner offered to show, by the testimony of Emmons, that Cadmus R. Delano then said to Emmons, that the firm of George S. Delano and Son assumed the liabilities of the business existing at the time the firm was formed, including the notes which were held by the National Bank of the Republic, and that this communication was not made for the purpose of obtaining advice. The court found that Emmons was counsel for Cadmus, and excluded the evidence.

The Chief Justice ordered that the petition be dismissed; and the petitioner alleged exceptions.

*C. H. Sprague,* for the petitioner.

*H. W. Ogden,* (*J. B. Crawford* with him,) for the respondents.

HAMMOND, J. At the trial in this court before the Chief Justice, the question was whether the notes executed by George S. Delano in the name of George S. Delano and Son, after the formation of the firm, and received by the petitioner as renewals of the individual notes of the said George, which had been discounted by the petitioner before the formation of the firm, were provable against the firm in the Court of Insolvency. The deci-

sion of this question finally turned upon whether these renewals were made with the knowledge and consent of Cadmus, the other partner.

At the hearing it appeared that George employed one Emmons, an attorney at law, to act as such attorney " to put the firm through insolvency," and gave him a list of the creditors. Emmons made out in proper form a list of the liabilities, including the notes in controversy. Cadmus, at the request of George, went to the office of Emmons, and there the contents of the schedule and the fact that these notes were included therein were made known to him, and he then signed the schedules and swore to their accuracy before Emmons as justice of the peace.

As tending to show that the renewals were made with the knowledge and consent of Cadmus, the petitioner offered to show by Emmons, that Cadmus then said to Emmons, that the firm assumed the liabilities of the business existing at the time the firm was formed, including the notes then held by the petitioner, and further, that this communication was not made for the purpose of obtaining advice. The court found that Emmons at that time was counsel for Cadmus and, having so found, excluded the evidence. The only question before us is whether the evidence was admissible.

The petitioner admitting the general rule that, where an attorney is professionally employed by a client, all communications between them in the course and for the purpose of that employment are so far privileged that the legal adviser, when called as a witness, cannot be permitted to disclose them, Taylor, Ev. (9th ed.) § 911, contends that " it is impossible to conceive how the information conveyed by the communication could have been presumed to be of any consequence in connection with the matter in hand," especially when taken in connection with the offer to show that it was not made for the purpose of taking advice. This contention does not seem to us tenable. The insolvency of an ordinary partnership imports the insolvency of every partner, and the proceedings in insolvency in such a case may involve the marshalling of the assets and claims as between the creditors of the firm and the individual creditors of each partner. Whether the notes in dispute were provable against the firm, or only against the individual estate of George, was a matter with which

Emmons in the course of his professional duty was likely to have occasion to deal, both as counsel for the firm and as counsel for Cadmus.  He needed to be informed about it, and the communication made by Cadmus was in the strict line of the information needed.  Indeed it is difficult to see how the attorney could have been in a situation to do his duty properly without some information on this point.  It is a plain case of a communication from a client to an attorney, while such attorney, and employed to continue to act as such in a matter running into the future.  The communication was of a fact about which he, as such attorney and in no other capacity, needed information.  It was made to him in the course of his employment.  It matters not that at that time it was not made for the express purpose of taking advice.  It is enough if it was a statement of a fact made in the course of the employment and was material thereto, or believed to be such, and was made by the client to his attorney in recognition and because of the professional relation between them.  The case is clearly distinguishable from *Hatton* v. *Robinson*, 14 Pick. 416, and similar cases upon which the petitioner relies.

*Exceptions overruled.*